**SO ORDERED.**

**SIGNED this 23 day of October, 2014.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **DARBY REID FRANK,** | **12-06722-8-SWH** |
| DEBTOR | |

### ORDER DENYING MOTION TO AVOID LIEN

Pending before the court is the motion of debtor Darby Reid Frank to value collateral and to avoid the lien of creditor J.P.Morgan Chase Bank N.A. ("Chase") to the extent that the lien secures a claim that is not secured only by real property that is the debtor's principal residence.[1] A hearing was held in Raleigh, North Carolina, on August 5, 2014. The court took the matter under advisement and both the debtor and Chase submitted supplemental briefs. For the reasons that follow, the debtor's motion will be denied.

### BACKGROUND

The debtor owns real property consisting of two lots located in Wilmington, North Carolina. The first lot, denominated Lot 35R-1 and having a street address of 154 Rogers Avenue, was

---

[1] Despite the title of the debtor's motion, it is in essence a motion to determine the applicability of § 1322(b)(2) and the resulting propriety of the debtor's proposed treatment of the Chase indebtedness.

acquired by the debtor on December 6, 2004 by general warranty deed, and is the lot upon which the debtor's house and an outbuilding are located. The debtor acquired the second lot, denominated Lot 35R and having a street address of 158 Rogers Avenue, on July 19, 2005. Lot 35R is adjacent to Lot 35R-1, also was acquired by general warranty deed,[2] and is undeveloped except to the extent that the debtor installed on it a swimming pool, as well as a walkway and fence that connect the pool to the house. On August 31, 2007, the debtor granted to Chase a deed of trust on lots 35R-1 and 35R to secure a promissory note in the original principal amount of $400,000.[3]

The deed of trust describes the property ("Property") by designating the PIN number of both lots and identifying them as follows:

> BEING ALL of Lots 35R and 35R-1, according to a plat entitled "Recombination Plat Rogers Division, Lot 35, 35R and 35R-1," duly recorded in Map Book 50, at Page 386, New Hanover County Registry, reference to which is hereby made for a more particular description. Being the same properties conveyed to Darby R. Frank in Deed Book 4593, Page 563 and Deed Book 4877, Page 3302, New Hanover County Registry.
> . . .
> which currently has the address of 154 Rogers Avenue, Wilmington, North Carolina, 28403

---

[2] At the same time, the debtor acquired another adjacent lot, denominated Lot 35 (with a street address of 145 Westbrook Avenue) from the same grantor. On November 7, 2006, as the owner of all affected lots, the debtor recorded an abandonment withdrawing a 10-foot public alleyway designation (the alley existed only as a designation) that ran along the long sides of Lots 35R and 35. On January 30, 2007, the debtor recorded a "Recombination Plat Rogers Division" indicating his ownership of all three lots and the abandonment of the alleyway; then, on February 9, 2007, the debtor transferred Lot 35 back to that grantor, representing that the transfer corrected an error in the July 19, 2005 deed, which should have only transferred Lot 35R, not both lots 35R and 35. Thus, the debtor was left with ownership of Lot 35R-1, upon which his house is situated, and adjacent Lot 35R (without the public alleyway), upon which the debtor installed a swimming pool.

[3] The debtor testified at the hearing of August 5, 2014, that he had the swimming pool installed for his personal and family use, and that it was installed prior to recordation of the deed of trust in favor of Chase.

Hearing Ex. 1 ("Deed of Trust") at 1, 3. The Deed of Trust is accompanied by only one rider; an "Adjustable Rate Rider."[4] Id. at 2. The instrument further provides:

> Occupancy: *Borrower shall occupy, establish, and use the Property as Borrower's principal residence* within 60 days of the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

Id. at 6 (emphasis added).

The debtor filed a petition under chapter 13 of the Bankruptcy Code on September 19, 2012. At that time, according to the debtor, he owed Chase a balance of approximately $467,375.08. Debtor's Mot. to Value Collateral and to Avoid Lien at ¶ 7 ("Debtor's Motion"). The debtor filed the instant motion on June 26, 2014, arguing that only Lot 35R-1 can be considered the debtor's "residence," that Lot 35R is a separate lot which is *not* used as the debtor's principal residence, and that by reason of Lot 35R's inclusion in the deed of trust, "Chase's claim is not protected by the anti-modification provision of 11 U.S.C. § 1322(b)(2)." Debtor's Brief in Sup. of Mot. to Value Collateral and to Avoid Lien at ¶ 5 ("Debtor's Brief"). The debtor contends that Chase's claim should be secured only in the amount of $245,000, which he alleges is the actual and present value of the two lots. This value is derived from an appraisal on both lots obtained by the debtor on September 17, 2012.

---

[4] The deed of trust does not include riders indicative of an intended use of the property for anything other than a principal place of residence, such as a "Planned Unit Development Rider," or a "Second Home Rider." The rider also identifies the Property as being located at 154 Rogers Avenue, Wilmington, NC.

In response, Chase contends that the debtor's actual use of both lots is entirely consistent with their function as the debtor's "principal residence" within the meaning of § 1322(b)(2), and that its claim is non-modifiable.

## DISCUSSION

The anti-modification statute at issue here prohibits modification of "a claim secured only by a security interest in real property that is the debtor's principal residence."  11 U.S.C. § 1322(b)(2).  There is no dispute with respect to the applicable law or the material facts at issue, and instead the matter presents a fresh opportunity for the court to again partake of the "hours of thought-provoking conundrums" posed by the language of § 1322(b)(2).  In re Proctor, 494 B.R. 833, 835 n.1 (Bankr. E.D.N.C. 2013).  Fortunately, the court's encounter with the statute in Proctor was a thorough one, and provides the analytical foundation for this matter as well.

In Proctor, as in this case, the court considered the complicated process of determining whether real property is a debtor's "principal residence" for purposes of the anti-modification clause, though with a specific focus on the temporal question of whether the chapter 11 debtor was precluded from modifying a mortgage debt secured by real property that originally was purchased by the debtor for use as a second home, but was used as his principal residence at the time the bankruptcy petition was filed.[5]  With that temporal question front-and-center, the case turned on which of two competing analyses the court chose to use: the "mortgage documents control" approach, which would determine whether the real property served as the debtor's principal

---

[5] Proctor involved application of 11 U.S.C. § 1123(b)(5), not § 1322(b)(2); however, as this court and many others have observed, the two provisions are "substantively identical," such that "an analysis of either one of the statutes has equal value when applied to the other."  Id. at 836 n.2 (citing Benafel v. One West Bank, FSB (In re Benafel), 461 B.R. 581, 585 (9th Cir. BAP 2011)).

residence as of the time the property was acquired, or the "petition date controls" analysis, which determines principal residence as of the petition date. After full review of both schools of thought, the court determined the debtor's principal residence with reference to the mortgage documents, for reasons that inform the court's decision today. As explained in Proctor:

> Because the Court of Appeals for the Fourth Circuit has not yet addressed the exact issue before this court, there is no controlling precedent. Instead, this court's conclusion rests upon the thoughtful and useful discussions set out by the proponents of both views, above, and also on the fact that courts within this circuit frequently reach decisions in related "determination of principal residence" contexts by turning first to the loan documents. That focus on what the parties originally bargained for, and what those parties understood their rights to be, strikes this court as the most appropriate starting point when a debtor's principal place of residence is in dispute.
>
> Here, it is undisputed that the debtor's loan was expressly conditioned upon the property being used as a second home, and the interest rate charged by OneWest ... reflects this. OneWest, as lender, acknowledged its higher risk factor *and was compensated for it* on terms established by OneWest. Without delving into the statute's legislative history and related considerations of congressional intent, the court points out the obvious, which is that a lender's expectations in extending a loan are best captured by the language of loan documents that, invariably, the lender itself provided. See Nobleman, 508 U.S. at 332, 113 S. Ct. 2106 (concurring opinion of Stevens, J.).

Id. at 840. Finally, in Proctor the court went on to make the following observation, which brings home the import of the court's analysis in that case, to the matter before it now:

> In this particular matter, the debtor prevails. However, the court's holding could just as easily benefit a lender seeking to avoid modification of a loan expressly made for real property to be used as a principal residence, then subsequently put by the debtor to a different or additional purpose. See, e.g., Benafel, 461 B.R. at 591. In different factual circumstances, the mortgage documents analysis could work real hardship on debtors' expectations in bankruptcy, given that individual circumstances *change*, for a host of reasons, often in connection with employment, health, marital status or family size. Those changes, in turn, prompt natural changes in domicile. In contrast, a lending bank's expectations are relatively stable and written in ink. The two are destined to clash and when that happens, in the court's view, the determination of principal residence for purposes of § 1123(b)(2) should be made with reference to that specific point in time in which debtor and lender *were* in full agreement as to their expectations, and articulated them in the mortgage documents.

Proctor, 494 B.R. at 841 (quoting Benafel v. One West Bank, FSB (In re Benafel), 461 B.R. 581 (9th Cir. B.A.P. 2011)).

In this matter, the expectations of Chase as the lender, and those of the debtor as borrower, aligned at the time the loan was made. The property description in the Deed of Trust very specifically identifies *both* lots multiple times (by PIN, plat number, and street address), and then collectively labels them with the debtor's current address (154 Rogers Avenue). This is wholly consistent with and reflective of the debtor's expressed intent to use both lots as his principal residence. Moreover, in this case, those expectations *remain* aligned. There was no evidence of any change in the debtor's use of the two lots since that time and, instead, all evidence supports the conclusion that the debtor's actual use of the Property is now, and seemingly has at all times been, consistent with its originally intended usage.

However, notwithstanding the representations in the mortgage documents (which the debtor does not discuss in his motion or memorandum), the debtor emphasizes that Lot 35R was purchased seven months after his purchase of Lot 35R-1, that his home already had been constructed at that time, and that "despite the presence of the pool, 158 Rogers Avenue [Lot 35R] remains a buildable lot." He points out further that Lot 35R has a separate street address, could be accessed from the street (via an entrance that the debtor acknowledges is "difficult to see on the pictures introduced into evidence of the property because of the trees on the lot"), and is subject to separate billing by New Hanover County for property taxes and certain utilities, such as water and road maintenance.

These facts are on all fours with those presented to the court in In re Beckford, 247 B.R. 27 (Bankr. D. Conn. 2000). In that case, the bankruptcy court rejected a chapter 13 debtor's effort to strip down the first mortgage on her residence under § 1322(b)(2) on grounds that the mortgage

6

covered two separate lots; one containing the house, the other being used for a paved driveway that provides the only off-street parking for the house. The debtor argued that the Hartford Tax Collector assessed separate tax bills for each lot, and that the second lot could be considered a buildable lot under that municipality's zoning regulations, such that the mortgage secured real property that was *not* her principal residence; this, she reasoned, entitled her to modify the mortgage. The court was not persuaded, concluding that

> the two lots at issue have been used together to provide a single-family residence for the debtor's family and for no other purpose. The location of the driveway and off-street parking area supports the conclusion that, although the house may be located within the confines of one lot, both lots have been used together as one residence. The debtor has presented no evidence that she has ever used any portion of the property for any purpose other than her principal residence.

Id. at 30.

The Beckford court also considered the policy implications of the debtor's "buildable lot" argument, and quoted with approval the observations made by the Bankruptcy Appellate Panel for the First Circuit in In re Marenaro, under factual circumstances comparable to those present in both Beckford, and in the case before this court:

> In Marenaro a mortgage was secured by three lots of record. The three lots were taxed separately and the debtor's single-family house was located on one of the lots. There, as here, the debtor argued that the lots had the potential to be sold and developed separately, although they were actually being used for a yard and parking area. The B.A.P. held that, "If an abstract potential to use property in a different way, never amounting to a gleam in the eye of the owner at the time the mortgage is given, can withhold the protection of the anti-modification language from a mortgagee, then virtually every mortgage would be subject to modification. This interpretation would contradict the legislative history indicating that treatment of residential mortgages was intended to encourage the flow of capital into the home lending market." . . .

Beckford, 247 B.R. at 29, quoting GMAC Mortgage Corp. v. Marenaro (In re Marenaro), 217 B.R. 358, 360-61 (B.A.P. 1st Cir. 1988). In a thoughtful concurrence to Marenaro, Judge Carlo observed

7

that it was difficult to construe the statute together with its history and apply both in a way that was "free from challenge"; ultimately, he wrote, he considered "the debtor's intent, the principal use of the property and the nature or character of the property all to be of importance." Marenaro, 217 B.R. at 361 (Carlo, J., concurring).

Each of these decisions is consistent with the rationale behind Proctor, and useful in assessing the facts before the court today. Significantly, this is not a situation in which the debtor's changed circumstances and changed use of a property complicate the legal analysis, or create a hardship for the debtor; indeed, the debtor's motion to avoid the lien strikes the court as being more opportunistic in tone. Not only did the debtor specifically attest to the Property's intended use as a principal residence in the Deed of Trust, the debtor has in fact used the Property for exactly that purpose, and for that purpose only. All evidence, including the debtor's testimony at the hearing, is to the effect that the adjacent lot is seamlessly integrated into the debtor's use of his residence and acts as expanded back yard and recreation area in connection with the residence.[6] The court concludes that both lots are now and at all relevant times have been used as the debtor's principal residence.

## CONCLUSION

Accordingly, for the foregoing reasons, the court concludes that the anti-modification provisions of § 1322(b)(2) preclude the debtor's effort to avoid the lien (*i.e.*, to bifurcate Chase's

---

[6] The appraisal commissioned by the debtor notes that the driveway to the house "appears to slightly encroach upon adjoining lot," *i.e.* Lot 35R. Hearing Ex. A. It is apparent from the photographs offered into evidence that without the adjoining lot and pool, the house would have no unpaved land behind it, other than a small swath located behind the garage. In other words, Lot 35R provides virtually all of the existing "back yard" amenities for the house. Hearing Exs. 2, 3.

secured claim by stripping down the lien and modifing treatment of the mortgage), and the debtor's motion is on that basis **DENIED**.

    **SO ORDERED**.

**END OF DOCUMENT**